**KOPYKAKE ENTERPRISES, INC., Plaintiff–Appellee,**

v.

**THE LUCKS COMPANY, Defendant–Appellant.**

No. 01–1015.

United States Court of Appeals, Federal Circuit.

Sept. 10, 2001.

---

William E. Thomson, Jr., McCutchen, Doyle, Brown & Enersen, LLP, of Los Angeles, California, argued for plaintiff-appellee.

E. Joseph Dean, Stoel Rives LLP, of Portland, Oregon, argued for defendant-appellant.

Before RADER, SCHALL, and DYK, Circuit Judges.

Opinion for the court filed by Circuit Judge DYK.

DYK, Circuit Judge.

The Lucks Company ("Lucks") appeals from the declaratory judgment of non-infringement entered by the United States District Court for the Central District of California in favor of Kopykake Enterprises, Inc. ("Kopykake"). *Kopykake Enters., Inc. v. Lucks Co.*, No. CV 99–00354 FMC (CWx) (C.D.Cal. Aug. 31, 2000), *amended by Kopykake Enters., Inc. v. Lucks Co.*, No. CV 99–00354 FMC (CWx) (C.D.Cal. Sept. 19, 2000). Because we conclude that the district court correctly determined that Kopykake's ink jet printing method is outside of the literal scope of the claims of Lucks' patent, we *affirm*.

I.

Lucks is the assignee of U.S. Patent No. 5,017,394 (the " '394 patent") which is directed to a method for producing edible base shapes upon which pictorial images are printed. The base shapes are used to decorate foodstuffs, such as cakes, cookies, pies, puddings, and ice cream, with high quality images. The claimed method comprises making a thin, flexible, edible base shape and decorating the base shape with a pictorial image. When the base shape is applied to a foodstuff, moisture from the foodstuff softens the base shape, causing it to conform and adhere to the foodstuff, thus transferring the pictorial image on the base shape to the foodstuff.

Independent claim 1 of the '394 patent, the only claim at issue on appeal reads as follows:

1. A method of manufacturing at least one edible base shape having at least one edible pictorial image thereon; wherein said base shape is dimensioned and adapted to be placed on and adhere to a foodstuff to decorate said foodstuff; wherein said base shape has a predetermined, two dimensional configuration and has thickness; wherein said edible base shape is manufactured from at least one edible, fluid material; and wherein said method comprises the steps of:

(a) selecting said edible, fluid material to have a composition such that when said edible, fluid material is dried said edible base shape formed therefrom has the properties when at room temperature of being both flexible and free standing[;]

(b) shaping said edible, fluid material into said predetermined, two dimensional configuration by filling at least one printing opening in a printing screen in a screen printing means with said edible, fluid material, wherein said at least one

printing opening has said predetermined, two dimensional configuration, and by screen casting said edible, fluid material through said at least one printing opening while simultaneously depositing said edible, fluid material in said predetermined, two dimensional configuration onto a releasable carrier medium by using said screen printing means to form said base shape; wherein said base shape has a thickness in the range of from about two one-thousandths of an inch to about fifty one-thousandths of an inch; wherein said edible fluid material is selected to have a composition such that it is able to flow relatively easily through said at least one printing opening, and yet be tacky enough to adhere to said releasable carrier medium, but not be so tacky that said edible fluid material adheres unduly to said printing screen after said edible base shape has been formed, to enable said printing screen to be easily removed from said edible base shape without ruining the formed base shape;

(c) drying said edible, fluid material in said predetermined, two dimensional configuration until it is firm enough when it is at room temperature to be removed intact from said releasable carrier medium as said edible base shape; and

(d) *screen printing said at least one edible pictorial image onto said edible base shape.*

'394 patent, col. 8, l. 37–col. 8, l. 51 (emphasis added).

The sole issue on appeal is whether "screen printing," as recited in step (d) of claim 1, encompasses Kopykake's ink jet printing methods.

## II.

Kopykake commenced the present action by seeking a declaratory judgment that the '394 patent is invalid, unenforceable, and not infringed by Kopykake. In response, Lucks brought counterclaims against Kopykake alleging direct infringement, induced infringement, and contributory infringement of the '394 patent. In due course, Lucks moved for partial summary judgment that Kopykake infringed claim 1 of the '394 patent—the only independent claim of the patent. In ruling on that motion, the district court construed claim 1 of the '394 patent and, based on its claim construction, determined that Kopykake was entitled to a declaratory judgment of non-infringement as a matter of law. *Kopykake Enters., Inc. v. Lucks Co.,* No. CV 99–00354 FMC (CWx) (C.D.Cal. Apr. 27, 2000) ("*Kopykake*").

The district court first construed the disputed limitation in step (d) of claim 1, "screen printing said at least one edible pictorial image onto said edible base shape." The court stated that the term "screen printing" has "its own customary meaning, which does not encompass [Kopykake's] method of ink jet printing." *Kopykake,* slip op. at 10. The court noted, however, that the specification of the '394 patent "ascribes a broader definition to the term." *Id.* Specifically, column 1, line 65, to column 2, line 5, of the patent states:

[T]he pictorial images will be referred to as being applied to the base shapes by "screen printing", it being understood that the term screen printing as used herein encompasses not only conventional screen printing, but also includes any other conventional printing process and any other conventional means and methods of applying the pictorial images to the base shapes, unless the context should indicate otherwise.

Relying on this statement, the court construed the "screen printing" step at issue as encompassing "conventional processes by which pictorial images are applied to

the base shapes." *Id.* at 11. The court found that this definition of screen printing included stenciling, lithographing, and other graphic arts means. *Id.* at 14.

The court sought to determine whether ink jet printing was a form of screen printing, as so defined, at the time the '394 patent application was filed. The court noted that the prosecution history of the '394 patent does not identify or describe ink jet printing as a conventional means of printing. *Id.* at 15. The court considered extrinsic evidence submitted by the parties, and found that the evidence did not establish that ink jet printing was "commonplace in the food industry" when the '394 patent was filed. *Id.* The court determined that "ink-jet printing was an emerging technology just coming into its own as a practical method of printing on paper. To suggest that ink-jet printing was a conventional means of applying pictorial images onto foodstuffs at the time [Lucks] submitted its patent application strains credulity." *Id.* at 16. Therefore, the district court held that Kopykake's ink jet printing method for printing pictorial images onto base shapes did not infringe claim 1 of the '394 patent and denied Lucks' motion for partial summary judgment of infringement. *Id.* Subsequently, the district court entered declaratory judgment of non-infringement in favor of Kopykake. *Kopykake Enters., Inc. v. Lucks Co.,* No. CV 99–00354 FMC (CWx) (C.D.Cal. Aug. 31, 2000), *amended by Kopykake Enters., Inc. v. Lucks Co.,* No. CV 99–00354 FMC (CWx) (C.D.Cal. Sept. 19, 2000). The court found that, by agreement of the parties, all remaining claims in the complaint and counterclaim were resolved or rendered irrelevant. *Id.* Lucks filed this timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

### III.

Lucks' appeal of the declaratory judgment of non-infringement is based on a challenge of the district court's claim construction.

Claim construction is a question of law which we review without deference. *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1174 (Fed. Cir.1998) (en banc). In construing patent claims, we first look to the intrinsic evidence of record—the claims, the specification, and, if in evidence, the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1576 (Fed.Cir.1996). If ambiguity remains after consideration of the intrinsic evidence, "extrinsic evidence may also be considered, if needed to assist in determining the meaning or scope of technical terms in the claims." *Pall Corp. v. Micron Separations, Inc.,* 66 F.3d 1211, 1216, 36 USPQ2d 1225, 1228 (Fed.Cir.1995) (citations omitted).

Lucks admits that the term "screen printing" has a well-known meaning in the art—printing by silk screening. Lucks correctly points out, however, that the specification of the '394 patent sets forth a different meaning for "screen printing," and that the claim must be construed in accordance with the meaning set forth in the specification. *See Vitronics Corp.,* 90 F.3d at 1582 ("Although words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history."). We conclude that the district court was correct in construing the claim not to be limited to conventional screen printing, but as including other conventional processes for printing on foodstuffs.

However, Kopykake argues that the prosecution history shows that Lucks disclaimed ink jet printing from coverage by the claims. *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576, 34 USPQ2d 1673, 1676 (Fed.Cir.1995) ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution.") (citations omitted). During prosecution of the '394 patent, the applicants distinguished several prior art references cited by the examiner by emphasizing that the references do not disclose "screen printing" pictorial images on foodstuffs. The prosecution history, however, was not concerned with the question of whether "screen printing" as used in claim 1 included ink jet methods of printing. For example, a prior art Swiss patent to Aschinger was distinguished because it involved the application of an image with a foil transfer process. From this, we conclude only that "screen printing" does not encompass a foil transfer process.

The applicants distinguished U.S. Patent No. 3,503,345 to Abrams because it allegedly did "not even disclose what his 'decorating means' are; much less disclosing [sic] that his decorating means are used for 'screen printing' ... as claimed by applicants." (internal citations omitted). With regard to other cited references, U.S. Patent No. 919,736 to Loesch and U.S. Patent No. 2,895,832 to Bersey, the applicant argued that "neither ... makes any disclosure of 'screen printing' ... at all." From these statements we cannot conclude that the applicants disclaimed any particular claim construction.

■ Finally, the applicants' statements in the prosecution history distinguished the Abrams patent, U.S. Patent 3,537,406 to Ort, and U.S. Patent 3,198,109 to Dwyer by asserting that none of them "discloses or suggests the successive method steps of first screen printing a very thin, flexible free standing edible image and then using screen printing to print onto it an edible pictorial image." This statement, however, neither defined "screen printing" nor excluded a particular printing process from the definition of screen printing. As we said in *York Products, Inc. v. Central Tractor Farm & Family Center*, 99 F.3d 1568, 1575, 40 USPQ2d 1619, 1624 (Fed. Cir.1996), "unless altering claim language to escape an examiner rejection, a patent applicant only limits claims during prosecution by clearly disavowing claim coverage."

■ Thus we conclude that "screen printing" includes, in the words of the specification, "any other conventional printing process and any other conventional means and methods" for applying pictorial images to foodstuffs. The question here is what were the "conventional printing processes" that were claimed as part of the invention. To discern the ordinary and customary meaning of "conventional" we may look to dictionary definitions of the word. Dictionaries, although a form of extrinsic evidence, may always be relied on by the court to determine the meaning of the claim terms "so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." *Vitronics*, 90 F.3d at 1584 n. 6; *see also Interactive Gift Express v. Compuserve, Inc.*, 231 F.3d 859, 866 n. 1, 56 USPQ2d 1647, 1653 n. 1 (Fed. Cir.2000). Dictionary definitions of "conventional" include "according with, sanctioned by, conforming to, or based on convention, custom, or traditional usages or attitudes; established and sanctioned by general agreement and usage; lacking spontaneity, originality or individuality." Webster's Third New International Dictionary 498 (1968).

■ We must next determine which processes were conventional at the time of the invention. *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 968, 34 USPQ2d 1321, 1335 (Fed.Cir.1995) (en banc) ("[T]he focus in construing disputed terms in claim language is not the subjective intent of the parties to the patent contract when they used a particular term. Rather the focus is on the objective test of what one of ordinary skill in the art at the time of the invention would have understood the term to mean."), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996); *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.,* 114 F.3d 1547, 1555, 42 USPQ2d 1737, 1742 (Fed.Cir.1997) ("As a general rule, the construing court interprets words in a claim as one of skill in the art at the time of invention would understand them.") (abrogated on other grounds in *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1174 (Fed.Cir.1998) (en banc)). While Lucks may be able to prove an earlier invention date than the date of its patent application, since it did not, we consider the meaning of the claim as of the date the invention was constructively reduced to practice— the date the patent application was filed. *Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 1576–77, 38 USPQ2d 1288, 1290 (Fed.Cir.1996). As we explained in *Schering Corp. v. Amgen Inc.,* 222 F.3d 1347, 1352–54, 55 USPQ2d 1650, 1653–55 (Fed. Cir.2000), when a claim term understood to have a narrow meaning when the application is filed later acquires a broader definition, the literal scope of the term is limited to what it was understood to mean at the time of filing.

Lucks, citing *Hoechst Celanese Corp. v. BP Chemicals Ltd.,* 78 F.3d 1575, 1580–81, 38 USPQ2d 1126, 1130 (Fed.Cir.), *cert. denied,* 519 U.S. 911, 117 S.Ct. 275, 136 L.Ed.2d 198 (1996), claims that screen printing itself was not a conventional process for printing on foodstuffs in 1986 and argues that a claim construction limiting "conventional printing processes" to processes for applying images to foodstuffs therefore is erroneous because it allegedly excludes the preferred embodiment of conventional screen printing. Lucks, however, cites no evidence to support its premise that screen printing was not conventional for printing on foodstuffs in 1986. Moreover, the patent specification states that "screen printing as used herein encompasses ... conventional screen printing," ('394 patent, col. 1, l. 68–col. 2, l. 1) thus clearly showing that conventional screen printing is covered.

The claims and the specification of the patent itself do not indicate what other printing processes one of ordinary skill in the art considered to be conventional for applying images to foodstuffs in October 1986. Although Lucks presented evidence that hundreds of thousands of ink jet printers were sold in 1985 and 1986, the evidence does not show that a single ink jet printer was used to print images on food at that time.

Lucks argues that the examiner's citation of U.S. Patent No. 4,548,825 (the " '825 patent"), which issued on October 22, 1985 and describes the use of ink jet printing to print letters on uncoated pharmaceutical tablets, demonstrates that the examiner understood step (d) of claim 1 to encompass ink jet printing. We disagree. The '825 patent was cited by the examiner as "art of interest." There is no discussion of the '825 patent in the prosecution history, and nothing in the record reveals why the examiner believed the '825 patent to be "of interest."

■ The '825 patent on its face does not indicate that ink jet printing was a conventional printing process for applying pictorial images to very thin, flat, flexible, edible,

free standing base shapes in October 1986. The '825 patent states that "[i]nk-jet systems are well known in the field of paper printing," '825 patent, col. 1, ll. 65–66, but the use of ink-jet printing for applying letters to tablets was considered novel and non-obvious. *See* 35 U.S.C. §§ 102, 103. Lucks presented no evidence that the invention described in the '825 patent was ever actually reduced to practice, commercially introduced, or became a commonly-used, well-known, or generally accepted method for printing images onto foodstuffs prior to October 1986.[1]

Because the appellant has not shown that, from the point of view of one of ordinary skill in the art, ink jet printing was a conventional method of printing images on foodstuffs at the time the application for the '394 patent was filed, "screen printing" may not be construed to cover ink jet printing.

## CONCLUSION

We accordingly *affirm* the district court's judgment of non-infringement.[2]

## COSTS

No costs.

SCHALL, Circuit Judge, concurring.

I also would affirm the district court's declaratory judgment that Kopykake's ink jet printing method does not literally infringe Lucks' U.S. Patent No. 5,017,394 (the " '394 patent"), but I would reach that result through a different route.

As noted in the majority opinion, the resolution of this case turns on claim construction, specifically, on the meaning of the term "screen printing" in step (d) of claim 1. Lucks admits that the term "screen printing" has a well-known meaning in the art—printing by silk screening. It argues, however, that the broader meaning set forth in the specification— "not only conventional screen printing, but also ... any conventional printing process and any other conventional means and methods of applying the pictorial images to the base shapes"—should govern construction of the claim term. If the claim construction inquiry ended with the specification, I might agree with Lucks' argument. However, when construing claims, we also review the prosecution history of the patent, if in evidence, because the prosecution history may contain "express representations made by the applicant regarding the scope of the claims." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1577 (Fed.Cir.1996).

In my view, a careful reading of the prosecution history of the '394 patent reveals that when the applicant discussed step (d) of claim 1, it used the term "screen printing" in accordance with its common meaning, conventional screen printing, not in accordance with the broad definition set forth in the specification. The applicant distinguished prior art references cited by the examiner by emphasizing that the references, which disclose methods of printing pictorial images on foodstuffs, do not disclose "screen printing." For example, in response to one

1. Lucks also cites U.S. Patent No. 4,168,662 (the " '662 patent"), entitled "Videojet Ink for Printing of Food Products," which issued on September 25, 1979. The '662 patent claims an ink for use in ink jet printing on citrus fruits and other foodstuffs. As with the '825 patent, the '662 patent does not on its face show that ink jet printing was a commonly

used printing process for printing on food in October 1986.

2. We note that after the district court ruled that there was no literal infringement as a matter of law, Lucks chose not to pursue an infringement claim based on the doctrine of equivalents.

rejection, the applicant explained that the claim "specifies the 'screen printing' of 'at least one edible pictorial image[']' onto the edible image," and the applicant argued that one of the cited references, Abrams, does not disclose its decorating means or disclose that it is "used for 'screen printing' ... as claimed by applicants." With regard to another cited reference, Aschinger, the applicant noted that it discloses a foil transfer process and argued that that process is "clearly not applicant's claimed 'screen printing.'" The applicant acknowledged that another reference, Wegner, discloses "screen printing," but argued that Wegner does not disclose screen casting of the base material, as recited in step (b) of claim 1. With regard to other cited references, Loesch and Bersey, the applicant argued that "neither ... makes any disclosure of 'screen printing' ... at all." In making these arguments, the applicant was not using the term "screen printing" in accordance with the broad definition set forth in the specification, but was using the term in accordance with its common meaning. That is, the applicant was not distinguishing the prior art references by asserting that they do not disclose any conventional printing processes, but was arguing that they do not disclose a specific printing process, conventional screen printing.

Another pertinent piece of prosecution history is found in the parent application file, Application No. 06/925,413, filed October 31, 1986, and abandoned in favor of the '394 patent. The examiner rejected the claim of the parent application that recited the step at issue, asserting, "Abrams teaches printing onto the base shape. To employ screen printing as the printing technique already taught by the art taken as a whole, would be obvious." In response to that rejection, the applicant stated:

> Neither Abrams, Ort or Dwyer discloses or suggests the successive method steps of first screen printing a very thin, flexible free standing edible image ... and then using screen printing to print onto it an edible pictorial image.... This enables the mass production of decorated edible images using nothing but inexpensive screen printing means, a goal not taught or suggested by any of the applied references.

Lucks admits that the first "screen printing" step discussed in the quoted passage and recited in step (b) of claim 1—the step that results in the formation of the free standing edible base—entails the use of conventional screen printing. [B10] By equating the first screen printing step with the screen printing step at issue (the step of screen printing an edible pictorial image onto the base shape, recited in step (d) of claim 1) and by emphasizing that the entire method can be accomplished with "nothing but inexpensive screen printing means," the applicant was, in effect, defining "screen printing" as used in step (d) of claim 1 as referring to conventional screen printing.[3]

I agree with the majority that the arguments set forth in the prosecution history do not reveal an express "disclaimer" of methods that use ink jet printing to accomplish step (d) of claim 1. As noted by the majority, the references that were the basis of the prior art rejections do not appear to disclose ink jet printing, and the prosecution history does not contain any discus-

---

3. Lucks argues that because step (b) of claim 1 uses the phrase "screen printing means" whereas step (d) uses the term "screen printing," the steps need not be construed as having the same meaning. Because my claim construction is based on the statements in the prosecution history that equate those two steps, not on the claim language alone, I need not address that argument.

sion of ink jet printing. Nevertheless, the prosecution history does demonstrate that when the applicant discussed step (d) of claim 1, it used the term "screen printing" in accordance with its common meaning, conventional screen printing. "Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers," *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576, 34 USPQ2d 1673, 1677 (Fed. Cir.1995); therefore, the term "screen printing" in step (d) of claim 1 should be construed as literally encompassing conventional screen printing only.

Because Kopykake uses ink jet printing, not conventional screen printing, to apply edible pictorial images to base shapes, I would affirm the district court's declaratory judgment of noninfringement.