# United States Court of Appeals for the Federal Circuit

04-1180

PC CONNECTOR SOLUTIONS LLC,

Plaintiff-Appellant,

v.

SMARTDISK CORPORATION
and FUJI PHOTO FILM U.S.A., INC.,

Defendants-Appellees.

Jonathan H. Steinberg, Irell & Manella LLP, of Los Angeles, California, argued for plaintiff-appellant. With him on the brief were Morgan Chu and Jonathan S. Kagan.

Larry S. Nixon, Nixon & Vanderhye P.C., of Arlington, Virginia, argued for defendants-appellees. With him on the brief was Mark E. Nusbaum.

Appealed from: United States District Court for the Middle District of Florida

Judge John E. Steele

# United States Court of Appeals for the Federal Circuit

04-1180

PC CONNECTOR SOLUTIONS LLC,

Plaintiff-Appellant,

v.

SMARTDISK CORPORATION
and FUJI PHOTO FILM U.S.A., INC.,

Defendants-Appellees.

_____

DECIDED: May 6, 2005

_____

Before MICHEL, Chief Judge, LOURIE, and PROST, Circuit Judges.

LOURIE, Circuit Judge.

PC Connector Solutions LLC ("PC Connector") appeals from the decision of the United States District Court for the Middle District of Florida granting summary judgment of noninfringement of United States Patent 5,224,216 in favor of SmartDisk Corporation and Fuji Photo Film U.S.A., Inc. (collectively, "SmartDisk"). PC Connector Solutions LLC v. SmartDisk Corp., No. 2:00-CV-539 (M.D. Fla. Nov. 10, 2003) (original judgment); PC Connector Solutions LLC v. SmartDisk Corp., No. 2:00-CV-539 (M.D. Fla. Feb. 23, 2005) (amended judgment). Because the district court did not err in granting summary judgment, we affirm.

BACKGROUND

PC Connector sued SmartDisk for infringement of the '216 patent, which is directed to the connection of peripherals to a computer via a coupler inserted into the diskette drive.  The salient features of the invention are set forth in claims 1 and 10, the only claims at issue on appeal, which read in relevant part as follows:

> 1.　　In combination a computer having a diskette drive, <u>an end user computer peripheral device having an input/output port normally connectible to a conventional computer input/output port</u>, and a coupler which couples the computer with the end user computer peripheral device without using a conventional computer input/output port:
>
>　　said coupler being sized and shaped for insertion within the diskette drive of the computer . . . whereby data is transferred from said computer to said end user computer peripheral device via said read/write head of said computer, said coupler, and said input/output port of said end user computer peripheral device.

'216 patent, col. 6, ll. 38-58 (emphasis added).

> 10.　　A method for forming a data transfer coupling between a computer having a diskette drive having a read/write head and an input/output port of one separate end user computer peripheral of a host of separate end user computer peripherals where <u>each separate end user computer peripheral is traditionally connectable to a computer by means of an input/output port of the computer and the standard input/output port of the particular separate computer peripheral</u>, said method comprising:
>
>　　inserting a coupler having a stationary data transfer element into the diskette drive . . . , and
>
>　　connecting said coupler to the standard input/output port of the separate computer peripheral . . . .

<u>Id.</u>, col. 8, ll. 1-19 (emphasis added).  The accused devices are various diskette-shaped, sleeve-like adapters for flash memories and smart cards that allow such media to be accessed through a diskette drive: a flash memory or a smart card is first inserted wholly within the adapter, which is then inserted into a diskette drive, whereupon the adapter facilitates data transfer between its resident flash memory or smart card and the computer.  (Martin Aff. ¶¶ 12-13; J.A. 264-65).

SmartDisk moved for summary judgment of noninfringement. The matter was referred to a magistrate judge who, relying on the analysis in Kopykake Enters., Inc. v. Lucks Co., 264 F.3d 1377 (Fed. Cir. 2001), of the word "conventional" as referring to technologies existing at the time of the invention, found no literal infringement of claim 1 on the basis that the flash memories and smart cards used with the accused devices were not peripherals that were "normally connectible to a conventional computer input/output port" in existence at the time of filing in 1988.[1] Similarly, by construing the terms "traditionally connectable" and "standard" in claim 10 as referring to input/output ("I/O") technologies existing in 1988, the magistrate judge found no literal infringement of that claim. Adopting the magistrate judge's report and recommendation, the district court[2] granted SmartDisk's motion for summary judgment of noninfringement.

PC Connector appealed. We have jurisdiction[3] pursuant to 28 U.S.C. § 1295(a)(1).

---

[1]  The '216 patent issued from a continuation application whose parent had been filed in 1988. The accused devices were developed in the 1990s. (Martin Aff. ¶ 14; J.A. 265-66).

[2]  Because the district court adopted the magistrate judge's report and recommendation, we shall refer to the magistrate judge's findings and conclusions as those of the district court.

[3]  While SmartDisk's counterclaims asserted both noninfringement and invalidity, the ruling granting summary judgment of noninfringement initially contained no reference to the invalidity counterclaim. During oral argument, counsel for both parties recognized the pendency of the invalidity counterclaim, and the consequent likelihood of a jurisdictional defect in the absence of a certification under Federal Rule of Civil Procedure 54(b). The parties thereafter obtained an amended judgment from the district court dismissing the counterclaim, nunc pro tunc, which ripened the appeal. See Storage Tech. Corp. v. Cisco Sys., Inc., 329 F.3d 823, 830 (Fed. Cir. 2003).

DISCUSSION

We review de novo the district court's grant of summary judgment of noninfringement. Ethicon Endo-Surgery, Inc. v. United States Surgical Corp., 149 F.3d 1309, 1315 (Fed. Cir. 1998). Determining whether a claim has been infringed requires a two-step analysis. Carroll Touch, Inc. v. Electro Mech. Sys., Inc., 15 F.3d 1573, 1576 (Fed. Cir. 1993). "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." Id. In seeking reversal, PC Connector charges that the determination of noninfringement was: (1) premised on a flawed claim construction; and (2) fatally deficient for failing to include an analysis under the doctrine of equivalents. Our review of the record, however, reveals nothing that compels us to disturb the judgment. See Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1540 (Fed. Cir. 1983) ("We sit to review judgments, not opinions.").

A.      Claim Construction

Claim construction is a question of law that we review without deference. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc). In interpreting claims, a court "should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).

PC Connector accuses the district court of having improperly construed the terms "normally connectible" and "conventional" in claim 1, and "traditionally connectable" and "standard" in claim 10, as fixing the peripherals and computer I/O ports described by such terms to be those in existence at the time of filing in 1988. According to PC

Connector, the terms merely clarify the manner of connecting peripherals to a computer—i.e., through dedicated I/O ports typically clustered at the rear of the chassis—without imposing a time-based limitation on the I/O technologies involved. We disagree.

PC Connector essentially advances a construction that would require the words "normally," "conventional," "traditionally," and "standard" to be redefined as specifically referring to—or, depending on the context, synonymous with being connectable to—a dedicated computer I/O port. We conclude that the record is unable to support this departure from the ordinary meanings of those words, whose descriptive properties are implicitly time-dependent. A claim cannot have different meanings at different times; its meaning must be interpreted as of its effective filing date. See Markman v. Westview Instruments, Inc., 52 F.3d 967, 986 (Fed. Cir. 1995) (en banc) ("[T]he focus is on the objective test of what one of ordinary skill in the art at the time of the invention would have understood the term to mean."), aff'd, 517 U.S. 370 (1996); see also Kopykake, 264 F.3d at 1383 ("[W]hen a claim term understood to have a narrow meaning when the application is filed later acquires a broader definition, the literal scope of the term is limited to what it was understood to mean at the time of filing."). Furthermore, "unless it appears from the specification or the file history that they were used differently by the inventor," the words of a claim are generally accorded their "ordinary and accustomed meaning." Carroll Touch, 15 F.3d at 1577; see also Vitronics, 90 F.3d at 1582 ("[A] patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history.").

We find nothing in the written description that amounts to a clear attempt by the patentee to impart any special meaning to the words "normally," "conventional," "traditionally," or "standard." Likewise, in the prosecution history, we do not read the patentability arguments that were made specifically to distinguish a test fixture as having effected the particular redefinition now advanced on appeal. As a consequence, the terms "normally," "conventional," "traditionally," and "standard" are governed by their ordinary and customary meanings, and that, in view of their implicit time-dependence, the district court did not err in construing the literal scope of the claim limitations qualified by those terms as being limited to technologies existing at the time of the invention.

PC Connector's argument that the dictionary definitions of "normally," "conventional," "traditionally," and "standard" contain no explicit reference to a time limitation is not persuasive, as their time-related significance is implicit from their ordinary usage—just as other words are implicitly not time-related. A comparison of the words "conventional" and "dedicated" is instructive in this regard, as PC Connector's briefs appear to treat them as interchangeable and coterminous in claim scope, when, in fact, they are not. To illustrate, a present-day USB port may be described as a "dedicated" I/O port within the ordinary meaning of "dedicated" as that word would be used to characterize the I/O ports found on a computer built in 1988, yet it would not be considered "conventional" back then, even though it is "conventional" today. (Martin Aff. ¶ 11; J.A. 264). Thus, unlike the word "dedicated," the word "conventional" necessarily has a meaning specific to the time of filing. Accordingly, the district court did not err in its claim construction.

B.    Infringement

Given its claim construction, the district court found no genuine issue of material fact on the infringement question, and thus held that there was no literal infringement. Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents. Bai v. L & L Wings, Inc., 160 F.3d 1350, 1353-54 (Fed. Cir. 1998).

Claim 1 requires that the peripheral device used with the claimed coupler have "an input/output port normally connectible to a conventional computer input/output port," while claim 10 similarly requires the peripheral device to have a "standard input/output port" that is "traditionally connectable to a computer." Properly construed, these claim limitations require the peripheral device to be connectable to a computer I/O port that was in common use at the time of filing in 1988.

Because the flash memories and smart cards that are used with the accused devices employ flat, planar surface contact electrodes at the I/O interface, (Martin Aff. ¶¶ 25-27; J.A. 273-74), which, to even a casual observer, cannot be connected to a vintage 1988 computer I/O port that uses a multi-pin connector, there can be no literal infringement.[4] See Builders Concrete, Inc. v. Bremerton Concrete Prods. Co., 757 F.2d 255, 257 (Fed. Cir. 1985) ("Literal infringement requires that the accused device embody every element of the claim.").

---

[4] Because connector incompatibility is dispositive of the infringement issue for claim 10, we need not address SmartDisk's argument regarding an alleged order of the method steps, which it advances as an alternative ground for affirming the finding of noninfringement.

As for infringement under the doctrine of equivalents, that argument is not properly before us. Having presented the district court with only conclusory statements regarding equivalence, without any particularized evidence and linking argument as to the "insubstantiality of the differences" between the claimed invention and the accused device, or with respect to the "function, way, result" test, PC Connector is now foreclosed from invoking the substantive application of the doctrine of equivalents. Texas Instruments Inc. v. Cypress Semiconductor Corp., 90 F.3d 1558, 1567 (Fed. Cir. 1996); see also Lear Siegler, Inc. v. Sealy Mattress Co., 873 F.2d 1422, 1425 (Fed. Cir. 1989) ("The evidence and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal infringement."). Moreover, conclusory statements regarding equivalence are not enough to warrant a remand on that issue, as they do not raise any genuine issues of material fact. See Intellicall, Inc. v. Phonometrics, Inc., 952 F.2d 1384, 1389 (Fed. Cir. 1992).

Even if there were not such a foreclosure, a finding of equivalence in this case would effectively vitiate the time-related limitation on the I/O ports, if what is "normally connectible," "conventional," "traditionally connectable," and "standard" at the time of filing were deemed to be equivalent to what is "normally connectible," "conventional," "traditionally connectable," and "standard" at a future date. As a matter of law, there can be no infringement under the doctrine of equivalents "[i]f a theory of equivalence would vitiate a claim limitation." Tronzo v. Biomet, Inc., 156 F.3d 1154, 1160 (Fed. Cir. 1998). Accordingly, the district court's failure to consider infringement under the doctrine of equivalents was, at most, harmless error.

We have considered the parties' other arguments and conclude that they are either unpersuasive or unnecessary for resolution of this appeal.

CONCLUSION

For the foregoing reasons, we conclude that the grant of summary judgment of noninfringement was not error, and accordingly affirm.

AFFIRMED