**AMERICAN PILEDRIVING EQUIPMENT, INC.,**
Plaintiff,

v.

**GEOQUIP, INC., Defendant.**

**Civil Action No. 2:08cv547.**

United States District Court,
E.D. Virginia,
Norfolk Division.

March 10, 2010.

Craig James Madson, Madson IP PC, Farmington, UT, Stephen Edward Noona, Kaufman & Canoles, P.C., Norfolk, VA, for Plaintiff.

Kenneth Paul Kula, Peter Charles Knops, Shook Hardy & Bacon LLP, Kansas City, MO, Richard Hooper Ottinger, Vandeventer Black LLP, Norfolk, VA, for Defendant.

## OPINION AND FINAL ORDER

REBECCA BEACH SMITH, District Judge.

This matter comes before the court on the defendant's motion for summary judg-

ment of noninfringement and invalidity of the 5,355,964 Patent (the "'964 Patent") and plaintiff's cross-motion for summary judgment of infringement. For the reasons set forth below, the court **GRANTS** the defendant's motion, in part, and **DENIES** the plaintiff's motion. As the court finds a hearing unnecessary, the court **DENIES** the parties' request for a hearing.

## I. Background

The '964 Patent was issued to John White on October 18, 1994, who then assigned it to plaintiff American Piledriving Equipment, Inc. ("APE"). The '964 Patent involves a vibratory assembly designed to drive piles into the earth to support buildings and other structures.[1] In the preferred embodiment, two eccentrically weighted counterweights, which are essentially gears with uneven weight distribution around their face, rotate in opposite directions in a synchronized manner. The opposite rotation cancels out the lateral forces that are created, while the uneven weight distribution of the counterweights generates substantial vertical forces that are used to drive the piles. The '964 Patent, which recites twenty-seven claims, describes the pile driving vibratory assembly itself, as well as a method for its construction.

On November 18, 2008, APE commenced the present action alleging that Geoquip, Inc. ("Geoquip") has infringed, and continues to infringe, claims 1-3, 5-14, and 16-18 of the '964 Patent by using, offering to sell or rent, selling, and/or renting the Model 250 and Model 500 vibratory pile driving devices (the "Accused Devices") made by Hydraulic Power Systems, Inc. ("HPSI") in the United States. On December 11, 2009, after conducting a hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), the court issued a Memorandum Opinion construing the patent terms and phrases disputed by the parties ("Claim Construction").[2]

On January 8, 2010, Geoquip filed a motion for summary judgment of noninfringement and invalidity of the '964 Patent. On January 22, 2010, APE filed its own motion for summary judgment on the issue of infringement only. APE contends that summary judgment on the issue of validity would be improper. Both motions have been fully briefed and are now ripe for review.

## II. The Asserted Claims

According to APE, the Accused Devices infringe claims 1-3, 5-14, and 16-18 of the '964 Patent. These asserted claims include four independent claims that are disputed by the parties: claims 1, 6, 11, and 16. Claim 1 recites a vibratory assembly for use in pile driving equipment that contains a housing designed to receive at least one counterweight, which includes the following elements:

> [S]aid counterweight having a cylindrical gear portion and an eccentric weight portion integral with said cylindrical gear portion, said eccentric weight portion having at least one insert-receiving area formed therein, said counterweight being made of a first metal; a solid insert member securely positioned in one of said at least one insert-receiving areas said solid insert member being made of a second metal having a specific gravity greater than the specific gravity of said first metal, and a melting point temperature of 328° C. or greater; and at least one driving means operatively connected to said counterweight and

---

1. The assembly performs both pile driving and pile pulling functions (collectively, "pile driving").

2. The court's claim construction is set forth below. *See infra* Part III.

adapted to rotate said counterweight about its rotational axis.

'964 Patent, col. 9, ll. 38–53. Claim 6, the second independent claim, differs from claim 1 only in that it requires that the housing contain at least two counterweights. *See id.* at col. 9, ll. 60–68; col. 10, ll. 1–31. Similarly, claim 11, the third independent claim, requires the same basic elements as claim 1, but also requires that the housing contain "an even number of counterweights." *Id.* at col. 10, l. 47. Thus, independent claims 1, 6, and 11 require the same essential components, differing only in the number of counterweights involved. Therefore, the court will consider the infringement of independent claims 1, 6, and 11 together.

The structure of the counterweight involved in claim 16, however, differs from that required in the other independent claims. Claim 16 recites a counterweight assembly for use in pile driving equipment, comprising:

[A] cylindrical gear portion having a plurality of gear teeth around its circumference, said cylindrical gear portion being made of a first metal; an eccentric weight portion *connected to* said cylindrical gear portion at a position radially outward of the axis of said cylindrical gear portion, said eccentric weight portion having at least one insert-receiving area therein, said eccentric weight portion being made of said first metal; and at least one solid insert member having a predetermined size securely positioned in said at least one insert-receiving area respectively, said at least one solid insert member being made of a second metal having a specific gravity greater than the specific gravity of said first metal and a melting point temperature of 328° C. or greater.

*Id.* at col. 11, ll. 8–25 (emphasis added). Thus, rather than the eccentric weight portion being "integral with" the cylindri-cal gear portion, as required by independent claims 1, 6, and 11, the eccentric weight portion recited by claim 16 must be "connected to" the cylindrical gear portion. Accordingly, the infringement analysis for claim 16 will differ from that of the other independent claims, and the court will address claim 16 individually.

### III. Claim Construction

On December 11, 2009, the court issued an opinion construing the terms and phrases disputed by the parties as follows:

(1) "Eccentric weight portion" means "that portion of the counterweight that extends either forward or rearward from the front or back face of the gear portion such that it shifts the center of gravity radially outward from the gear's rotational axis."

(2) "Integral" means "formed or cast of one piece."

(3) "Insert-receiving area" means "a bore located, at least in part, within the eccentric weight portion that is shaped to hold securely a solid insert member."

(4) "Connected to" means "joined together, united or linked."

(Claim Construction 24.) In addition, the parties have agreed to the following construction of the phrase "cylindrical gear portion": "The gear portion of the counterweight is a substantially cylindrical portion and has a rear face, a front face and a plurality of gear teeth around its perimeter." (*Id.* at 8 n. 2.)

In reaching the above construction, the court made three findings relevant to the issue of infringement. First, the court specifically rejected APE's argument that the "eccentric weight portion" is functionally defined, being that portion of the counterweight that creates the eccentric moment of the counterweight. (*Id.* at 9, 12–13) ("[T]he specification gives no indica-

tion that the 'eccentric weight portion' was intended to include, as APE suggests, that portion of the gear portion containing unbalanced weight."). Instead, the court agreed with Geoquip that "implicit within the specification is the understanding that the eccentric weight portion is defined structurally and is physically distinct from the cylindrical gear portion." (*Id.* at 14.)

Second, the court found that, during the course of the reexamination of the '964 Patent, the patentee had made a "clear and unmistakable disavowal" limiting the term "integral" to one-piece counterweights. (*Id.* at 18.) Nevertheless, the court also indicated that claim 16, which uses the phrase "connected to" rather than the term "integral," contemplates a two-piece counterweight. (*Id.* at 16.) Thus, the disavowal of two-piece counterweights applies only to the term "integral" and does not apply to claim 16.

Last, with respect to the phrase "connected to," the court held that the '964 Patent, in its criticism of prior art, did not make a clear disavowal of bolting as a means of connecting the eccentric weight portion to the cylindrical gear portion. (*Id.* at 23.) Thus, claim 16, which indicates that the eccentric weight portion is "connected to" the cylindrical gear portion, could potentially cover a two-piece counterweight in which the eccentric weight portion is bolted to the cylindrical gear portion.

The court specifically relies upon these findings, as well as the general reasoning underlying its claim construction, in deciding the issue of infringement.

## IV. Standard of Review

In order to grant a motion for summary judgment, the court must conclude that the current pleadings, submissions, and affidavits, when taken in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact, entitling the moving party to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party is entitled to summary judgment when the evidence is such that no reasonable jury could return a verdict in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (holding that only "facts that might affect the outcome of the suit under governing law" are material).

## V. Analysis

This matter comes before the court on cross-motions for summary judgment on the issue of infringement, as well as Geoquip's motion for summary judgment of invalidity. The court will address first the issue of infringement and then will turn to the issue of invalidity.

### A. Infringement

■ Adjudication of patent infringement involves a two-step process: (1) the court must construe the disputed claim terms to determine the scope and meaning of the claims alleged to be infringed; and (2) the court must determine "whether the properly construed claims encompass the accused device." *Zelinski v. Brunswick Corp.,* 185 F.3d 1311, 1315 (Fed.Cir.1999). The court has already completed the first step when it issued its opinion on December 11, 2009, construing the disputed claim terms and phrases.[3] The court now addresses the second task of determining whether the claims, as construed by the court, encompass the Accused Devices.

### 1. Standard for Patent Infringement

■ In order to prove patent infringement, the patentee must "prove that the accused device embodies every limitation in the claim, either literally, or by a

3. *See supra* Part III.

substantial equivalent." *Id.* at 1316. Literal infringement occurs when every limitation recited in the claim is found in the accused device so that the claims read on the device exactly. *Amhil Enterprises Ltd. v. Wawa, Inc.,* 81 F.3d 1554, 1562 (Fed.Cir.1996).

■■■ Even if literal infringement is not present, however, a patentee may still establish infringement by showing that the accused device contains elements that are equivalent to those claim limitations that are not literally present in the device. *Zelinski,* 185 F.3d at 1316. The doctrine of equivalents is applied to each individual claim limitation, not to the invention as a whole. *K–2 Corp. v. Salomon S.A.,* 191 F.3d 1356, 1367 (Fed.Cir.1999). Thus, "the doctrine of equivalents cannot be used to vitiate an element from the claim in its entirety." *Id.*

■■ Depending on the facts of the case, courts employ one of two tests to determine equivalence. *Warner–Jenkinson Co., Inc. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 39–40, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). First, under the insubstantial differences test, "[a]n element in the accused device is equivalent to a claim limitation if the only differences between the two are insubstantial." *Honeywell Intern. Inc. v. Hamilton Sundstrand Corp.,* 370 F.3d 1131, 1139 (Fed.Cir.2004). Alternatively, under the function-way-result test, an element in the accused device is equivalent to the claim limitation when "the element performs substantially the same function in substantially the same way to obtain substantially the same result as the claim limitation." *Schoell v. Regal Marine Industries, Inc.,* 247 F.3d 1202, 1210 (Fed. Cir.2001).

■■ "Summary judgment on the issue of infringement is proper when no reasonable jury could find that *every limitation* recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *PC Connector Solutions LLC v. SmartDisk Corp.,* 406 F.3d 1359, 1364 (Fed.Cir.2005) (emphasis added). Conclusory statements regarding equivalence do not raise a genuine issue of material fact. *See id.*

The parties in this case agree that summary judgment on the issue of infringement is proper because there is no dispute regarding the configuration of the Accused Devices or Geoquip's use and rental of those devices. Geoquip admits to obtaining and renting to contractors both the Model 250 and Model 500 devices made by HPSI. Moreover, the parties agree that the Model 250 and Model 500 are identical in structure and configuration, differing only in size: the Model 250 houses two counterweights, whereas the Model 500 houses four. Therefore, the application of the claims to the Model 250 and the Model 500 is essentially the same.

Because the parties agree to the structure of the Accused Devices, and because Geoquip admits to both possessing and renting out those devices, the court agrees with the parties that there is no genuine issue of material fact with respect to the issue of infringement, and therefore, summary judgment is appropriate.

### 2. The Accused Devices

The parties agree that the counterweight assembly of the Accused Devices is accurately represented by the following diagram:

**Figure 3: Counterweight Assembly for the Recent Configuration Model 250 and 500 device**

The counterweight consists of a weight, here labeled the "eccentric," that is bolted to the face of a "gear" via huck bolts.[4] To increase weight, the "eccentric" contains three blind holes that are filled with lead, while the bottom portion of the "gear" also contains a blind hole, which holds a tungsten insert. The blind holes do not extend fully through either part of the counterweight and are visible only from one side.[5] In addition, the "gear" contains several apertures in its top portion, which further increase the amount of eccentric weight located in the bottom of the counterweight.

As indicated by a line in the diagram, the "gear" contains a ridge along its face that results in the gear teeth being slightly set back from the front face of the "gear."[6] A similar ridge is found on the back face of the "gear."[7] Such ridges are present, however, only in the female "gears" of the Accused Devices and not in the male "gears."[8] Much of APE's argument depends on the existence of that

4. The court agrees with APE that the part of the counterweight labeled "eccentric" is not necessarily equivalent with the claim phrase "eccentric weight portion" just because the diagram is so labeled. Similarly, the term "gear" is not necessarily equivalent with the claim phrase "cylindrical gear portion." For a discussion of those claim phrases as applied to the Accused Devices, *see infra* Part V.A.3.

5. This is why the "eccentric" is shown from two angles in Figure 3, *supra* at 588.

6. Geoquip has represented to the court that the recess is 0.031 inches deep (Def.'s Mem.

Opp. Pl.'s Mot. Summ. J. 9), and APE *has not contested that measurement.*

7. For simplicity, the court will discuss only the ridge on the front face of the "gear." The existence of the second ridge does not affect the court's analysis.

8. In particular, of the two "gears" in the Model 250, one of them is male, and one of them is female. Similarly, of the four "gears" in the Model 500, two of them are male and two of them are female.

ridge, and therefore, APE's argument focuses on the structure of the female gear.

### 3. The "Eccentric Weight Portion" and the "Cylindrical Gear Portion"

Before the court addresses the issue of infringement directly, the court must address the preliminary matter of determining which portion of the Accused Devices should be considered for purposes of infringement. To accomplish that goal, the court must identify within the Accused Devices what constitutes the "eccentric weight portion" and what constitutes the "cylindrical gear portion," as those phrases have been construed by the court.

Although the parties agree that the Accused Devices contain both an "eccentric weight portion" and a "cylindrical gear portion," as required by the claims, they dispute which parts of the counterweight should be associated with those phrases. The parties have agreed to the following construction for the phrase "cylindrical gear portion": "The gear portion of the counterweight is a substantially cylindrical portion and has a *rear face,* a *front face* and a plurality of gear teeth around its perimeter." (emphasis added). Moreover, the court has construed the phrase "eccentric weight portion" to mean "that portion of the counterweight that *extends* either forward or rearward from the *front or back face* of the gear portion such that it shifts the center of gravity radially outward from the gear's rotational axis." (emphasis added).

Geoquip argues that the "gear" of the Accused Devices qualifies as a "cylindrical gear portion" under the agreed construction. The court agrees with Geoquip. As shown in Figure 3, *supra* at 588, the "gear" is substantially cylindrical and has a rear face, a front face, and a plurality of gear teeth around its perimeter. Therefore, under the plain and ordinary meaning of the agreed construction, the "gear" constitutes a "cylindrical gear portion," as contemplated by the '964 Patent.

Similarly, Geoquip argues that the "eccentric" found in the Accused Devices is an "eccentric weight portion" under the court's construction. The court once again agrees with Geoquip. The "eccentric," a lead-filled weight, is attached to the bottom portion of the "gear" via bolts. Thus, the "eccentric" extends forward from the front face of the "gear." Moreover, because the "eccentric" adds unbalanced weight to the "gear," it "shifts the center of gravity radially outward from the gear's rotational axis." Therefore, under the plain and ordinary meaning of the court's construction, the "eccentric" constitutes an "eccentric weight portion," as contemplated by the '964 Patent.

APE's argument for infringement, however, aims to twist and subvert the court's construction in attempts to capture the Accused Devices. Indeed, APE's argument is grounded on the premise that the "gear" of the Accused Devices alone, without consideration of the "eccentric," contains all of the elements of claim 1.[9] In that regard, APE argues that the ridge along the outside face of the female gear represents the dividing line between what APE identifies as the "eccentric weight portion," i.e., that portion of the "gear" situated forward from the gear teeth ("APE's eccentric weight portion"), and what APE identifies as the "cylindrical gear portion," i.e., that portion of the "gear" on the same

9. Because APE's argument is focused on the female "gears," APE admits that the Model 250, which contains only one female "gear," does not infringe independent claims 6 and 11, as those claims each require at least two infringing counterweights. APE asserts that the Model 500, however, which has two female gears, does infringe independent claims 6 and 11.

vertical plane as the gear teeth and backward ("APE's cylindrical gear portion").[10]

Because APE's eccentric weight portion contains a portion of the tungsten insert located in its bottom portion, as well as apertures in its top portion, APE's eccentric weight portion is eccentrically weighted and shifts the center of gravity radially outward from the gear's rotational axis. Nevertheless, when construing the phrase "eccentric weight portion," the court explicitly found that the '964 Patent contemplates that particular element of the claims in terms of the element's structure, not just its function. Therefore, the fact that APE's eccentric weight portion serves the function of shifting the center of gravity radially outward from the gear's rotational axis is not sufficient; the "eccentric weight portion" must also extend forward or rearward from the front or back face of the cylindrical gear portion. APE's eccentric weight portion, however, does *not* extend forward from the front *face* of the cylindrical gear portion.

In attempts to undermine the court's construction, APE reconceptualized the term "face" in a counterintuitive manner in order to reach its desired result. "Face," while not used in the claims of the '964 Patent, is used within the specification in a manner consistent with the court's claim construction:

> As best seen in FIGS. 3A and 3B, the gear portion **41** of the counterweight **40** is substantially cylindrical and has a *rear face* **94**, a *front face* **96**, and a plurality of gear teeth **98** around its perimeter. The eccentric weight portion **43** of the counterweight **40**, which is formed integral with the gear portion **41**, extends forward from the *front face* **96** of the gear portion.

'964 Patent, col. 5, ll. 17–23 (emphasis added). "Face" is also used within the specification in reference to the drive motor: "The preferred drive motor **42** is an L-shaped, hydraulic, spherical piston motor having a *too face* **88** that engages the top plate **38** and a *bottom face* **90** that is perpendicularly oriented relative to the top plate." *Id.* at ll. 2–5. As illustrated by these examples, there is no indication in the specification that the term "face" is to be given anything other than its ordinary meaning.

The Oxford English Dictionary defines "face" as "[t]he upper or outer surface of a thing," *OED Online* (Oxford Univ. Press, Dec. 2009), and the court agrees that such a definition represents the plain and ordinary sense of that word. Thus, the court finds that the "front face" of the "gear" is not the vertical plane formed at the location of the gear teeth, as APE suggests, but rather the vertical plane formed by the gear's front, outer surface. Looking at Figure 3, *supra* at 588, the ridge around the front face of the "gear," as properly understood, represents not a protrusion from the hidden "face" of the gear, as APE would contend, but rather a recess from the front face of the gear, as properly conceived by Geoquip.

In addition to the plain meaning of the term "face," the court's conclusion is further supported by the structure of the Accused Devices. The ridge on which APE relies is located only on the female gears and is "standard in gear design in order to minimize chipping at the edges of the gear teeth." (Def.'s Mem. Opp. Pl.'s Mot. Summ. J. 10.)[11] Were APE's view to be adopted, the "face" of the female gear, which has the ridge, and the "face" of the male gear, which does not, would be locat-

---

10. Again, this analysis ignores the existence of the back ridge for the sake of simplicity. *See supra* note 7.

11. APE has not contested the facts within this paragraph.

ed in different vertical planes, despite the fact that the gears are of equivalent thickness. Such a view is clearly contrary to the plain and ordinary meaning of the '964 Patent and this court's construction.

Furthermore, were APE's position adopted, it would be only the female gears and not the male gears that would be guilty of *infringement*, with the entire issue of *infringement* resting on the presence of a 0.031–inch ridge. Although the court accepts APE's contention that the size of the ridge should not necessarily be determinative, its shallow depth supports the court's conclusion that it is a recess rather than a protrusion from the gear's front face.

For the foregoing reasons, the court specifically rejects APE's contention that the "gear" itself contains an "eccentric weight portion," as that phrase has been construed by the court. An "eccentric weight portion" must extend forward from the front face of the "gear," i.e., the gear's outer surface, and APE's eccentric weight portion does not do so. Therefore, the court finds that the "eccentric weight portion" of the Accused Devices is that portion of the counterweight labeled the "eccentric" in Figure 3, *supra* at 588, while the "cylindrical gear portion" is that portion of the counterweight labeled "gear," as Geoquip suggests.

### 4. Infringement of Independent Claims 1, 6, and 11

APE contends that the Accused Devices infringe claims 1, 6, and 11, either literally or via the doctrine of equivalents. Geo-

quip responds that the Accused Devices do not infringe claims 1, 6, and 11 because the following elements are not satisfied: (1) the Accused Devices do not contain "a cylindrical gear portion and an eccentric weight portion *integral with* said cylindrical gear portion"; and (2) the Accused Devices do not contain an "eccentric weight portion having at least one *insert-receiving area* formed therein." '964 Patent, col. 9, ll. 38–43 (emphasis added).

On the first point, the court agrees with Geoquip that, under the court's claim construction, the Accused Devices do not literally contain an eccentric weight portion "integral with" a cylindrical gear portion. In the previous section, the court found the "eccentric weight portion" of the Accused Devices to be the "eccentric," and the "cylindrical gear portion" to be the "gear."[12] In the Accused Devices, the "eccentric" is attached to the "gear" by means of huck bolts. The court, however, has construed the term "integral" to mean "formed or cast of one piece." As the "eccentric" is attached the "gear" via bolts, those components of the Accused Devices are not "formed or cast of one piece." Accordingly, the Accused Devices do not literally satisfy the "integral" requirement.[13]

Moreover, the court agrees with Geoquip that the Accused Devices do not have an "insert-receiving area" formed within the eccentric weight portion. The court construed the phrase "insert-receiving area" to mean "*a bore located, at least in*

---

12. *See supra* Part V.A.3.

13. APE also cannot satisfy the "integral" requirement under the doctrine of equivalents. This court has previously found that, during the course of the reexamination of the '964 Patent, the patentee made a "clear and unmistakable disavowal" limiting the term "integral" to one-piece counterweights. (Claim Construction 18.) Therefore, the doctrine of

equivalents cannot be used to broaden the term "integral" to include two-piece counterweights within its scope. *See, e.g., Gaus v. Conair Corp.*, 363 F.3d 1284, 1291 (Fed.Cir. 2004) ("Having disavowed coverage of devices in which the two components are not separate ... the patentee cannot reclaim that surrendered claim coverage by invoking the doctrine of equivalents.").

*part, within the eccentric weight portion* that is shaped to hold securely a *solid insert member.*" (emphasis added). In addition, claims 1, 6, and 11 require that the "solid insert member," positioned within the "insert-receiving area," be made of a metal having "a melting point temperature of 328° C. or greater." *See, e.g.,* '964 Patent col. 9, ll. 45–50; col. 10, ll. 17–23, 56–63.

It is undisputed by the parties, however, that the solid insert member that is made of tungsten, which has a melting point temperature greater than 328° Centigrade, is wholly contained within the "gear" and does not extend into the "eccentric." In other words, the tungsten insert is not located within the *"eccentric weight portion,"* even in part. The only inserts within the "eccentric" part of the Accused Devices are made of lead, which has a melting point below 328° Centigrade. Therefore, the bores within the "eccentric" that house the lead inserts cannot qualify as "insert-receiving areas" because they do not house "solid insert members" with the appropriate melting point. Because there is no "insert-receiving area" located, at least in part, within the eccentric weight portion, the Accused Devices do not literally contain an "insert-receiving area," as required by claims 1, 6, and 11.[14]

In sum, because the Accused Devices do not contain an eccentric weight portion "integral" with a cylindrical gear portion and do not contain an "insert-receiving area," located, at least in part, within the eccentric weight portion, the Accused Devices do not infringe independent claims 1, 6, and 11.

### 5. Infringement of Independent Claims 16

APE also contends that the Accused Devices infringe independent claim 16, either literally or via the doctrine of equivalents, while Geoquip denies such infringement. Unlike independent claims 1, 6, and 11, independent claim 16 does not require that the eccentric weight portion be "integral" with the cylindrical gear portion. Nevertheless, like claims 1, 6, and 11, claim 16 does require that the device contain an "insert-receiving area." For the reasons just mentioned, however, the eccentric weight portion of the Accused Devices does not contain an "insert-receiving area," as required by the claims, because the only inserts located within the "eccentric" are composed of lead, which does not have the melting point required by the claims.

Therefore, because the Accused Devices do not contain an "insert-receiving area," as required by claim 16, the Accused Devices do not literally infringe independent claim 16.[15]

### 6. Summary

Because the Accused Devices do not contain an eccentric weight portion "integral" with a cylindrical gear portion, as required by independent claims 1, 6, and 11, and because the Accused Devices do not have an "insert-receiving area," as required by independent claims 1, 6, 11, and 16, summary judgment of noninfringement is appropriate with respect to all of the asserted claims.[16]

---

**14.** Because the claims specifically require that the solid insert member have a melting point temperature of 328° Centigrade or greater, APE may not assert lead as an equivalent under the doctrine of equivalents. *See K–2 Corp.,* 191 F.3d at 1367 ("[T]he doctrine of equivalents cannot be used to vitiate an element from the claim in its entirety.").

**15.** The doctrine of equivalents also does not apply. *See supra* note 14.

**16.** Because the infringement of dependent claims requires the presence of all limitations found in the *independent claims,* in addition to further limitations, the court need not consider the *dependent claims* individually, having found no infringement of the independent claims.

## B. Invalidity

In addition to the cross-motions for summary judgment on the issue of infringement, Geoquip has submitted a motion for summary judgment on the issue of invalidity. APE resists this motion, arguing there is a genuine issue of material fact that necessitates trial. For the following reasons, the court exercises its discretion to dismiss Geoquip's counterclaim of invalidity as moot.[17]

The Federal Circuit has held that "a district court has discretion to dismiss a counterclaim alleging that a patent is invalid as moot where it finds no infringement." *Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459, 1468 (Fed. Cir.1998); *see, e.g., Digital Privacy, Inc. v. RSA Sec., Inc.*, 199 F.Supp.2d 457, 459 (E.D.Va.2002) ("In accord with *Phonometrics*, this court exercises its discretion 'to dismiss a counterclaim alleging that a patent is invalid as moot where it finds no infringement.' "). Indeed, "[w]here, as here, noninfringement is clear and invalidity is not plainly evident, it is appropriate to treat only the infringement issue." *Phonometrics*, 133 F.3d at 1468 (quoting *Leesona Corp. v. United States*, 208 Ct.Cl. 871, 530 F.2d 896, 906 n. 9 (1976)). For these reasons, the court exercises its discretion and dismisses Geoquip's counterclaim of invalidity as moot, in light of the court's holding of noninfringement.

## VI. Conclusion

For the foregoing reasons, the court **GRANTS** Geoquip's motion for summary judgment of noninfringement and finds that Geoquip is entitled to a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, that it has not infringed, either literally or under the doctrine of equivalents, any claim of the '964 Patent. APE'S

motion for summary judgment of infringement is therefore **DENIED**.

Geoquip's second counterclaim, seeking a declaratory judgment as to the invalidity of the '964 Patent, is hereby **DISMISSED** as moot, in light of the court's holding of noninfringement. Thus, Geoquip's motion for *summary judgment* of invalidity is **DENIED**.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Final Order to counsel for the parties. The Clerk is further **DIRECTED** to enter judgment in this case in accordance with this Opinion and Final Order.

**IT IS SO ORDERED.**

---

17. Geoquip has asserted two counterclaims in this action, one seeking a declaratory judgment of noninfringement, and the second seeking a declaratory judgment of the invalidity of the '964 Patent.