# United States Court of Appeals for the Federal Circuit

05-1476

PLANET BINGO, LLC,

        Plaintiff/Counterclaim Defendant-Appellant,

and

GARY WEINGARDT,

        Counter Defendant-Appellant,

v.

GAMETECH INTERNATIONAL, INC.,

        Defendant/Counterclaimant-Appellee,

and

RICHARD FEDOR, GARY HELD and GRAHAM LEONARD,

        Defendants-Appellees.

<u>Jeffrey Weiss</u>, Weiss, Moy & Harris, P.C., of Washington, DC, argued for plaintiff/counterclaim defendant-appellant and counter defendant-appellant.

<u>Claude M, Stern</u>, Quinn Emanuel Urquhart Oliver & Hedges, LLP, of Redwood Shores, California, argued for defendant/counterclaimant-appellee and defendants-appellees.

Appealed from: United States District Court for the District of Nevada

Judge Philip M. Pro

# United States Court of Appeals for the Federal Circuit

05-1476

PLANET BINGO, LLC,

Plaintiff/Counterclaim Defendant-
Appellant,

and

GARY WEINGARDT,

Counter Defendant-Appellant,

v.

GAMETECH INTERNATIONAL, INC.,

Defendant/Counterclaimant-
Appellee,

and

RICHARD FEDOR, GARY HELD and GRAHAM LEONARD,

Defendants-Appellees.

_____

DECIDED: December 13, 2006
_____

Before NEWMAN, MAYER, and RADER, <u>Circuit Judges</u>.

RADER, <u>Circuit Judge</u>.

The United States District Court for the District of Nevada determined that GameTech International, Inc., did not infringe claims 3, 6-9 of U.S. Patent No. 5,482,289 (the '289 patent) and claims 1, 4, 7, 8, 11, 12, 15, 16, 19, 21, 24, 25, 28, 32, and 35-39 of U.S. Patent No. 5,727,786 (the '786 patent) belonging to Planet Bingo, LLC. <u>Planet Bingo, LLC v. GameTech Int'l, Inc.</u>, CV-S-01-1295-

PMP (D. Nev. Apr. 18, 2005) (<u>Infringement Decision</u>). The district court further found in a separate order that prior art anticipated claims 2 and 5 of the '289 patent under 35 U.S.C. § 102(b). <u>Planet Bingo, LLC v. GameTech Int'l, Inc.</u>, CV-S-01-1295-PMP (D. Nev. May 6, 2005) (<u>Invalidity Decision</u>). Finding no error, this court affirms the district court's findings.

I.

Planet Bingo, LLC (Planet Bingo) is the exclusive licensee of both the '289 and '786 patents. The patents claim alternative methods of playing bingo by coupling numbers with additional "indicia" or "markings," such as colors or shading patterns. <u>See, e.g.</u>, '289 patent, col.5 ll.27-29; '786 patent, col.3 ll.48-52. These additional designations overlay a traditional bingo game to produce more winning combinations for more prizes. For example, a player may achieve a classic bingo (e.g., a straight line) and then couple that line with an additional indicator (e.g., a straight line that is also all red) to win a greater jackpot. The additional designations come into play either with markings on the bingo balls in the '289 patent or with a marked bingo flashboard in the '786 patent. '289 patent, col.5 ll.20-25; '786 patent, col.4 ll.40-50. The patents also specify that players might make a second, separate wager to access a progressive jackpot. '289 patent, col.3 ll.6-10; '786 patent, col. 3 ll.21-24. In this type of bingo with wagers, the unclaimed purse in each round carries over to the next game (think Powerball). <u>See, e.g.</u>, '289 patent, col.3 ll.42-44. The bingo hall may also set aside a portion of this second wager to pay winners of the progressive jackpots. <u>Id.</u> at col.5 ll.38-51.

In August 2002, GameTech International, Inc. (GameTech), Planet Bingo's competitor in the gaming industry, began to exhibit their own version of bingo at trade shows. The accused version, "Rainbow Bingo," also includes an additional layer of markings, with different colors assigned to the columns of a bingo matrix, and jewels or coins assigned to the rows. The "Rainbow Bingo" game randomly distributes the extra winning combinations only after drawing the first bingo ball. Rainbow Bingo also features progressive jackpots by carrying over prize amounts into the next game until a winner claims the jackpot associated with a particular color, coin, or jewel. Though Rainbow Bingo can be played on conventional bingo cards using a specialized flashboard, GameTech also envisioned linking many bingo halls through electronic bingo cards. This feature made very large progressive prizes possible, including a "life changing prize" for a ruby bingo.

Planet Bingo brought suit against GameTech on November 2, 2002. The complaint specified that GameTech offered an infringing version of Rainbow Bingo for sale. Planet Bingo charged infringement of certain claims of the '289 patent and the '786 patent. GameTech asserted that Rainbow Bingo did not infringe two limitations from each patent: (1) using indicia to mark the bingo balls (in the '289 patent) or the bingo board (in the '786 patent), and; (2) establishing a predetermined winning combination (in both the '289 patent and the '786 patent). GameTech further challenged that a prior art bingo game anticipated these patents.

05-1476                                3

A magistrate judge held a Markman hearing and construed fourteen claim limitations in favor of GameTech. Planet Bingo, LLC v. GameTech Int'l, Inc., CV-S-01-1295-JMC (D. Nev. Nov. 3, 2004). The district court later adopted this claim construction to support its finding of no infringement. Infringement Decision, slip op. 10. Because the accused device marked the bingo card rather than the bingo balls, and assigned the specific winning combinations only after drawing the first bingo ball, the district court found no infringement—literal or under the doctrine of equivalents. Id. at 11, 17. The district court relied on the winning combination limitation alone to reach this result. Id. The district court, therefore, granted summary judgment for GameTech. Id. at 17.

The district court considered the counterclaim of invalidity in a separate motion in limine. To challenge claims 2 and 5 of the '289 patent, GameTech relied on an antecedent game known as "HOTBALL," a form of progressive bingo developed in 1991. Invalidity Decision, slip op. 9. Planet Bingo appeals the district court's non-infringement and invalidity findings.

II.

"This court reviews the district court's grant or denial of summary judgment under the law of the regional circuit." MicroStrategy, Inc. v. Bus. Objects, S.A., 429 F.3d 1344, 1349 (Fed. Cir. 2005) (citation omitted). The United States Court of Appeals for the Ninth Circuit, "reviews a district court's summary judgment order de novo, viewing all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." Diruzza v. County of Tehama, 323 F.3d 1147, 1153 (9th Cir. 2003).

05-1476                                    4

INFRINGEMENT

Infringement entails a two-step process: "First, the court determines the scope and meaning of the patent claims asserted . . . [and second,] the properly construed claims are compared to the allegedly infringing device." Cybor Corp. v. FAS Tech. Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc) (citations omitted). "Step one, claim construction, is a question of law, that we review de novo. Step two, comparison of the claims to the accused device, is a question of fact, and requires a determination that every claim limitation or its equivalent be found in the accused device." N. Am. Container, Inc. v. Plastipak Packaging, Inc., 415 F.3d 1335, 1344 (Fed. Cir. 2005) (citations omitted).

The district court construed the limitation "progressive . . . predetermined winning combination" to mean the precise elements necessary to achieve bingo in a particular game are known before the first bingo ball is drawn. Infringement Decision, slip op. 10. All of the asserted claims contain this limitation. The district court's opinion for both non-infringement and invalidity rested on its reading of this limitation.

Claim 2 of the '289 patent shows this limitation in context:[1]

2. The method of playing a game of bingo comprising:

    a) providing a player with a bingo card having a plurality of numbered spaces formed as a matrix having five rows and five columns used in the play of a five-by-five bingo game;

    b) providing a plurality of bingo balls, each having individual numbers corresponding to the numbered spaces on the bingo card;

---

[1] The district court found this claim invalid in view of HOTBALL but offered no decision regarding infringement of this claim.

c)  a player making a first wager to be eligible for the five-by-five bingo game[;]

d)  a player making a second wager to be eligible for a progressive jackpot;

e)  randomly selecting consecutive bingo balls;

f)  awarding a first preselected amount when the player achieves a predetermined winning combination on the five-by-five matrix of the bingo card;

g)  designating a portion of the second wager to a separate progressive jackpot pool;

h)  establishing a <u>predetermined combination as a winning combination</u> for the progressive jackpot pool; and

i)  awarding the <u>progressive</u> jackpot pool to the player when he achieves the <u>predetermined winning combination</u> on the bingo card.

'289 patent, col.7 ll.31-55 (emphasis added).

On appeal, GameTech argues that, the "progressive . . . predetermined winning combination" limitation requires fixation of the entire winning combination before drawing the first bingo ball in any given bingo game. According to GameTech, a player of a Planet Bingo game will know ahead of time that "red" squares will give the progressive bingo and the position of those red squares on the board, but a player of Rainbow Bingo will not know this information until after the first ball is drawn. Planet Bingo responds that "progressive . . . predetermined winning combination" merely requires that the participants in the game know, before the start of play, the predetermined rules for winning a progressive jackpot. Planet Bingo argues that the disclosure only requires that

the player know in advance that he (according to claim 2 of the '289 patent) is playing for a red bingo to win the progressive prize, not what the exact location on the board the red squares will be before the game begins. Thus, the claims recite a "progressive . . . predetermined winning combination," but the parties dispute what must be predetermined before drawing the first bingo ball.

The claim language governs claim meaning. Phillips v. AWH Corp., 415 F.3d 1303,1312 (Fed. Cir. 2005) (en banc). In this case, the claim language supports GameTech's construction. The claims recite a "progressive . . . predetermined winning combination" not merely "predetermined rules" for identifying a winning combination. The rules may dictate that a "red bingo" will win the progressive game. The winning combination, however, identifies the particular squares, colored red, that will produce the progressive bingo.

Further, the claim's preamble calls for "a game" of bingo. While the rules for a particular progressive jackpot may require achieving bingo with red squares, the winning combination for that game is something different; i.e., a straight red bingo, a diagonal red bingo, a four corners red bingo, etc. Each game will have a particular "progressive . . . predetermined winning combination." The claims themselves specify that each individual game, rather than the rules for overall play, will have a different winning combination.

The specification often supplies the critical context to construe the claim language. Philips, 415 F.3d at 1315. In this case, again, the discussion of the disputed term in the specification supports the district court's construction. Repeatedly the specification explains that the game determines the "winning

combination" before the first bingo ball is drawn, thus making it "predetermined." For example, the '289 patent states: "The operator of the bingo game will designate at the beginning of the game which particular combination or combinations of covered spots will be winning combinations for that particular game." Col.1 ll.34-37. The '289 patent states that, in the preferred embodiment, "[a] winning combination is established for the progressive jackpot pool and bingo balls are randomly selected." Col.6 ll.12-13. The '289 patent uses this exact same phrase again to describe an alternative embodiment. Col.6 ll.28-29.

Likewise, the '786 patent states: "The operator of the bingo game will designate at the beginning of the game which particular combination or combinations of covered spots will be winning combinations for that particular game." Col.1 ll.41-45. The '786 patent goes on to describe a feature of the invention, the electronic display board, noting that "[p]rior to each game, some of the numbers on the display board are specifically designated with the first distinctive marking and a smaller portion of the numbers on the display board are specifically designated with the second distinctive marking." Col.3 ll.12-15.

The summary of the invention for the '786 patent states: "At the beginning of each game, an electronic random number generator selects a predetermined group of bingo numbers" which will be blue, green, red, and so forth. Col.3 ll.37-40. The '786 patent goes on to state that the electronic board illuminates the colors so that "[e]ach player can then see at the beginning of a game which of the bingo numbers have the various distinctions." Col.5 ll.31-33. Finally the '786 patent reiterates: "The only modification that a bingo establishment needs to

undertake to practice the method of the present invention is to install the electronic reader board that can show different designations on the numbers on the board as well as a random number generator to predetermine which numbers are going to have which designations in a particular game." Col.5 l.64-Col.6 l.3. Thus, these passages inform the meaning of "progressive . . . predetermined winning combination," specifying both what it is and when it occurs. Specifically, the specification invariably fixes the winning combinations before a game starts.

The district court determined that GameTech did not infringe either literally or under the doctrine of equivalents because the accused device does not determine the winning combination until after the first bingo ball is drawn; i.e., until after the game begins. Infringement Decision, slip op. 11-12, 17. This court affirms the district court's ruling that Rainbow Bingo does not literally infringe these claims because it does not determine the winning combination until after drawing the first ball. Rainbow Bingo certainly contains a "progressive . . . predetermined winning combination," indeed it would be impossible to play without one. However, the '289 and '786 patents use this term to set that winning combination before the game begins. In this sense, Rainbow Bingo does not disclose to a player the predetermined winning combination until after the game is underway. Thus, Rainbow Bingo does not contain a necessary limitation. The district court correctly found that GameTech does not literally infringe the claims. See Bayer AG v. Elan Pharm. Research Corp., 212 F.3d 1241, 1247 (Fed. Cir. 2000).

Asserting infringement under the doctrine of equivalents, Planet Bingo argues that the Rainbow Bingo game incorporates only an insubstantial variation from the claims because the progressive predetermined winning combination appears right after, rather than right before, the first bingo ball is drawn. Equivalents are questions of fact reviewed under the clearly erroneous standard. Insta-Form Prods., Inc. v. Universal Foam Sys., Inc., 906 F.2d 698, 702 (Fed. Cir. 1990). Planet Bingo bears the burden of showing that the accused method may perform substantially the same step, in substantially the same way, with substantially the same result. Toro Co. v. White Cons. Ind., 266 F.3d 1367, 1370 (Fed. Cir. 2001).

According to Planet Bingo, the timing of the predetermined winning combination does not affect the game's prize amounts, odds, or other essential characteristics. Further, Planet Bingo argues, players of Rainbow Bingo will know of the blue, purple, ruby, and emerald progressive combinations before the first bingo ball is drawn. The only thing, argues Planet Bingo, that a player of Rainbow Bingo will not know before the first bingo ball is drawn is where those progressive combinations will be locked in. GameTech in turn argues that waiting for the first ball to be drawn does make a substantial difference in the game because it increases the excitement.

The district court found, contrary to Planet Bingo's assertion, that "after" and "before" are very different. Infringement Decision, slip op. 16. The district court determined that it could not substitute this change without ignoring entirely the claim limitation. Id. at 13 (citing Cooper Corp. v. Kvaerner Oilfield Prods.,

Inc., 291 F.3d 1317, 1322 (Fed. Cir. 2002)). The district court also relied on a line of cases from this court construing the doctrine of equivalents "narrowly." Infringement Decision, slip op. 14-15 (citing Asyst Techs., Inc. v. Emtrak, Inc., 402 F.3d 1188 (Fed. Cir. 2005); Moore U.S.A., Inc. v. Standard Register Co., 229 F.3d 1091 (Fed. Cir. 2000); Sage Prods., Inc. v. Devon Indus., Inc., 126 F.3d 1420 (Fed Cir. 1997)). The district court determined that the game method in which the winning combination is not known until after the game begins cannot be equivalent to a game method where this occurs before because "after is opposite of before, not equivalent." Infringement Decision, slip op. 16.

The Supreme Court emphasizes that the doctrine of equivalents must not expand to eliminate a claim element entirely. Warner-Jenkinson v. Hilton Davis Chem. Co., 520 U.S. 17, 29 (1997). The doctrine does provide additional coverage for the exclusive right to protect a patent holder in the event of an unforeseeable change. Sage Prods., 126 F.3d at 1425 ("However, as between the patentee who had a clear opportunity to negotiate broader claims but did not do so, and the public at large, it is the patentee who must bear the cost of its failure to seek protection for this foreseeable alteration of its claimed structure. . . . [T]he alternative rule—allowing broad play for the doctrine of equivalents to encompass foreseeable variations, not just of a claim element, but of a patent claim—also leads to higher costs.") (citation omitted). Here, the patents contain a distinct limitation, which was part of the bargain when the patent issued. This court cannot overlook that limitation or expand the doctrine of equivalents beyond

its purpose to allow recapture of subject matter excluded by a deliberate and foreseeable claim drafting decision. See Id.

Further, the cases Planet Bingo cites in support of a broad interpretation to the doctrine of equivalents, specifically Ethicon Endo-Surgery, Inc. v. United States Corp., 149 F.3d 1309 (Fed. Cir. 1998), and Wright Medical Technology v. Ostenoics Corp., 122 F.3d 1440 (Fed. Cir. 1997), do not alter this court's present analysis. In Wright Medical, this court remanded the district court's decision of summary judgment under the doctrine of equivalents because evidence showed that the accused medical device that only passed through part of the femur, rather than through the femur, may be found to be equivalent because it achieves at least some of the functionality of the claimed invention. 122 F.3d at 1446. Further, in Ethicon, this court found that the accused device infringed under the doctrine of equivalents because of the length of time a restraint structure contacted a barrier was minimal. 149 F.3d at 1313. The court in Ethicon distinguished Sage Prods., noting that in Sage Prods. "no subtlety of language or complexity of the technology, nor any subsequent change in the state of the art, such as later-developed technology, obfuscated the significance of the limitation at the time of its incorporation into the claim." Ethicon, 149 F.3d at 1318 (quoting Sage Products, 126 F.3d at 1425). Arguably, the facts surrounding the inventions (both medical devices) in both Wright and Ethicon made the disputed differences less foreseeable at the time the patent was drafted.

Further, the Ethicon and Wright cases dealt only with questions of small variations in the degree of achieving a claimed limitation. See Ethicon, 149 F.3d at 1321; Wright, 122 F.3d at 1445. In this case, the proposed application of the doctrine of equivalents would change "before" to "after," a more marked difference. This court has refused to apply the doctrine in other cases where the accused device contained the antithesis of the claimed structure. For example, in Moore, this court refused to find infringement under the doctrine of equivalents for an accused product with only a minority of adhesive strips where the claim called for a majority. 229 F.3d at 1106. Similarly, in Asyst Technologies, an unmounted computer was not an equivalent to a claim limitation requiring a mounted computer. 402 F.3d at 1195. Finally, in Sage, an elongated slot within, rather than on top of, the claimed container did not infringe under the doctrine of equivalents. 126 F.3d at 1425-26.

Similarly, in this case, the difference in timing creates a difference of knowing the winning combination before the game starts or after the game starts. Rainbow Bingo always determines the winning combination after start of the game. Therefore, it cannot be "predetermined." This court upholds the district court's refusal to find infringement by equivalents.

ANTICIPATION

In a separate order, the district court held claims 2 and 5 of the '289 patent invalid as anticipated by the prior art bingo game HOTBALL. Invalidity Decision, slip op. 8-9. Claim 2 is produced in its entirety above. Claim 5, an independent claim, is identical to claim 2 except that claim 2 additionally requires a five-by-five

bingo matrix card. '289 patent, col.7 ll.39-40; col.8 ll.29-30. HOTBALL is a prior art bingo game that was marketed to gaming operators in July 1991. The applicant did not cite, and the Patent and Trademark Office did not consider, this prior art bingo method.

HOTBALL is a bingo game in which, before the start of the game, the player places a wager to play the conventional bingo game, and then places a second wager to play HOTBALL. Originally, HOTBALL was marketed as a method in which the player would pick the HOTBALL number. However, some bingo halls played HOTBALL differently. Under the alternative method, the game operator would select the HOTBALL number by drawing a bingo ball out of the hopper, announcing it as the HOTBALL. If the player achieved bingo with the selected HOTBALL number as the last number that formed the pre-selected winning combination, the player won a separate HOTBALL jackpot. A July 1991 promotional letter described this alternative method of playing HOTBALL.

A claim is anticipated and thus invalid if each and every limitation of a claim is found, expressly or inherently, in a single prior art reference. Schering Corp. v. Geneva Pharm., 339 F.3d 1373, 1379 (Fed. Cir. 2003). The district court determined that HOTBALL disclosed each and every limitation of claim 2 and 5. In particular, the district court determined that both HOTBALL and claims 2 and 5 required a "predetermined winning combination" before the start of the game. Invalidity Decision, slip op. 8.

At the district court, the parties agreed that HOTBALL disclosed every limitation of claim 2 and 5 of the '289 patent except for step (d), which requires "a

player making a second wager to be eligible for a progressive jackpot", step (g), which requires "designating a portion of the second wager to a separate progressive jackpot pool", and step (h), which states "establishing a predetermined combination as a winning combination for the progressive jackpot pool." Id. at 6. The district court determined that the HOTBALL method contained the steps requiring a second wager and designating a portion of this wager to the progressive jackpot. Id. at 7. In addition, the district court determined that while nothing in the claims of the '289 patent require the "progressive . . . predetermined winning combination" to be determined by the game hall, the game can be played in this way. Id. Thus, at least when the game hall operator discloses the HOTBALL number at the outset, that prior selection met the "progressive . . . predetermined winning combination" limitation because the winning combination would be a straight line with the HOTBALL number as the last number in the winning combination. Id.

On appeal, Planet Bingo argues that HOTBALL does not disclose the precise elements of the winning combination before the first ball is drawn. Specifically, Planet Bingo argues that the progressive jackpot in HOTBALL is not based on a "predetermined winning combination" but rather on a player's ability to guess the last number needed for a bingo win.

HOTBALL requires that either a player or bingo hall operator pick a number before the start of the game that, if drawn as the final component of a bingo combination, gives the winner an additional progressive prize associated with that number (the HOTBALL number). The predetermined winning

combination in the claims of the '289 patent does not require the player to know the numbers that will form the predetermined winning combination, only that the combination of one or more spaces on the bingo card matrix, which, when covered by a player, represents a bingo win; together with other necessary predetermined winning criteria. Here, a player of HOTBALL will know that they need a particular pattern to represent a bingo win and a predetermined HOTBALL number on the last ball to win the progressive prize. Thus, this court affirms the district court's finding that the HOTBALL method anticipates claims 2 and 5 of the '289 patent.

## COSTS

Each party shall bear its own costs.

## AFFIRMED